UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

NOVO NORDISK A/S AND NOVO NORDISK INC.,

       Plaintiffs,

v.

MED 1 AESTHETICS, P.L.L.C.,

       Defendant.

Case No. _____

## COMPLAINT

Plaintiffs Novo Nordisk A/S ("NNAS") and Novo Nordisk Inc. ("NNI") (collectively, "Plaintiffs" or "Novo Nordisk") file their complaint against Med 1 Aesthetics, P.L.L.C. ("Defendant") for false advertising and deceptive and unfair trade practices, and seek injunctive and other relief. Plaintiffs allege as follows, on actual knowledge with respect to themselves and their own acts, and on information and belief as to all other matters.

## INTRODUCTION

1.    Novo Nordisk is a healthcare company with a 100-year history of innovation in developing medicines to treat serious chronic diseases like diabetes and obesity.

2.    The development of semaglutide is an example of Novo Nordisk's commitment to innovation for people living with chronic diseases. Semaglutide is the foundational molecule that serves as the primary ingredient for Novo Nordisk's three prescription-only medicines approved by the Food and Drug Administration ("FDA"): Ozempic® (semaglutide) injection and Rybelsus® (semaglutide) tablets for adults with type 2 diabetes and Wegovy® (semaglutide) injection for chronic weight management.

3.    Novo Nordisk is the only company in the United States with FDA-approved medicines containing semaglutide.

1

4. Novo Nordisk is also the only company authorized to identify its FDA-approved semaglutide medicines using the trademarks Ozempic®, Wegovy®, and Rybelsus®.

5. The FDA has not approved any generic versions of semaglutide medicines. To the contrary, the FDA has sent warning letters to companies that claimed that their Unapproved Products have the "same active ingredient as Ozempic, Rybelsus, and Wegovy," noting that Ozempic and Wegovy are currently the only "two injectable semaglutide products FDA-approved for the U.S. market."[1]

6. This is an action brought pursuant to the Lanham Act, 15 U.S.C. §§ 1125 *et seq.*, related state laws, and the common law arising out of Defendant's acts of false advertising and deceptive and unfair trade practices.

7. Defendant markets and sells to patients compounded drug products that purport to contain semaglutide.

8. Even though such compounded drug products have not been evaluated by the FDA for their safety, effectiveness, or quality, Defendant falsely and misleadingly represents to patients that its products are FDA-approved or the same as, or equivalent to, Novo Nordisk's FDA-approved semaglutide medicines.

9. Defendant's conduct is likely to confuse and deceive patients into mistakenly believing that they are purchasing authentic Novo Nordisk medicines or medicines that have been evaluated by the FDA, studied in clinical trials, and deemed safe and effective.

---

[1] FDA – Warning Letter to Ozempen.com, MARCS-CMS 684435 — JUNE 24, 2024, https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/ozempencom-684435-06242024#:~:text=WARNING%20LETTER&text=As%20discussed%20below%2C%20FDA%20has,new%20drugs%20and%20misbranded%20drugs.

2

## THE PARTIES

10. Plaintiff NNAS is a corporation organized and existing under the laws of the Kingdom of Denmark and has its principal place of business in Bagsværd, Denmark.

11. Novo Nordisk developed the Ozempic®, Wegovy®, and Rybelsus® medicines.

12. NNAS has granted to NNI exclusive rights to market, advertise, promote, offer for sale, and sell Ozempic®, Wegovy®, and Rybelsus® medicines in the United States.

13. NNI is a corporation organized and existing under the laws of Delaware and has its principal place of business in Plainsboro, New Jersey.

14. NNI promotes, offers, and sells Novo Nordisk's Ozempic®, Wegovy®, and Rybelsus® medicines throughout the United States, including in this District.

15. Defendant Med 1 Aesthetics, P.L.L.C. is a professional limited liability company with a registered business address at 2250 Oak Street, Wyandotte, Michigan 48192 in this judicial district.

16. Defendant sells and promotes compounded drug products that purport to contain semaglutide, but that have not been approved by the FDA ("Unapproved Compounded Drugs").

17. Defendant falsely claims or otherwise misleadingly suggests that its Unapproved Compounded Drugs are the same as or equivalent to the Ozempic®, Wegovy®, and Rybelsus® medicines.

## JURISDICTION AND VENUE

18. The Court has subject matter jurisdiction over the Lanham Act causes of action pleaded herein pursuant to 35 U.S.C. § 1121 and 28 U.S.C. § 1338(a).

19. The Court has supplemental jurisdiction over the state and common law causes of action pleaded herein pursuant to 28 U.S.C. § 1338(b).

20. Defendant is subject to personal jurisdiction in this District because Defendant is a Michigan-registered company and has a principal place of business in this District.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant operates in this District, manufactures or sells its compounded drug products that purport to contain semaglutide in this District, and otherwise conducts business in this District.

## NOVO NORDISK'S FDA-APPROVED SEMAGLUTIDE MEDICINES AND OZEMPIC®, WEGOVY®, AND RYBELSUS® TRADEMARKS

22. Plaintiffs use the trademarks "Ozempic," "Wegovy," and "Rybelsus" to identify and promote the FDA-approved Ozempic®, Wegovy®, and Rybelsus® medicines. The Ozempic®, Wegovy®, and Rybelsus® medicines are sold and marketed in the United States by NNAS's indirect, wholly-owned subsidiary, NNI.

23. The Ozempic® medicine is indicated for adults with type 2 diabetes to improve blood sugar (glucose), along with diet and exercise. The Ozempic® medicine also lowers the risk of major cardiovascular events such as stroke, heart attack, or death in adults with type 2 diabetes and known heart disease.

24. The Wegovy® medicine is indicated to reduce excess body weight and maintain weight reduction long term in adults and children aged ≥ 12 years with obesity, and some adults with overweight and weight-related medical problems, along with a reduced calorie diet and increased physical activity.

25. The Wegovy® medicine is also indicated, with a reduced calorie diet and increased physical activity, to reduce the risk of major adverse cardiovascular events such as "cardiovascular" death, heart attack, or stroke in adults with known heart disease and with either obesity or overweight.

26. The Rybelsus® medicine is indicated for adults with type 2 diabetes to improve blood sugar (glucose), along with diet and exercise.

27. The Ozempic®, Wegovy®, and Rybelsus® medicines have been extensively studied in clinical trials and are FDA-approved.

28. Each of the Ozempic®, Wegovy®, and Rybelsus® medicines has a unique safety and efficacy profile which is set forth in its respective product label.

29. The Ozempic®, Wegovy®, and Rybelsus® medicines are prescription-only medicines that should only be prescribed in direct consultation with, and under the supervision of, a licensed healthcare professional.

## DEFENDANT'S SALE OF UNAPPROVED COMPOUNDED DRUGS

30. Novo Nordisk does not sell its FDA-approved semaglutide medicines, Ozempic®, Wegovy®, and Rybelsus®, to Defendant for resale or redistribution.

31. Defendant markets and sells to patients Unapproved Compounded Drugs that purport to contain semaglutide.

32. The FDA has not approved Defendant's Unapproved Compounded Drugs.

33. On information and belief, the Unapproved Compounded Drugs sold by Defendant are made by compounding pharmacies, which deliver them either directly to patients or to Defendant for administration or dispensing to patients.

34. The FDA defines compounding as a "practice in which a licensed pharmacist, a licensed physician, or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combines, mixes, or alters ingredients of a drug to create a medication tailored to the needs of an individual patient."[2]

---

[2] Human Drug Compounding, https://www.fda.gov/drugs/guidance-compliance-regulatory-information/human-drug-compounding.

5

35. According to the FDA, "[c]ompounded drugs are not FDA-approved. This means that FDA does not review these drugs to evaluate their safety, effectiveness, or quality before they reach patients."[3]

36. The FDA has further stated that compounded drugs "do not have the same safety, quality, and effectiveness assurances as approved drugs. Unnecessary use of compounded drugs unnecessarily exposes patients to potentially serious health risks."[4]

37. As the FDA has explained, "[c]ompounded drugs pose a higher risk to patients than FDA-approved drugs because compounded drugs do not undergo FDA premarket review for safety, quality or effectiveness. Compounded drugs should only be used for patients whose medical needs cannot be met by an available FDA-approved drug."[5]

38. The process used to produce most "semaglutide" used in compounding is fundamentally different from the process used to produce the semaglutide in Novo Nordisk's FDA-approved medicines. Novo Nordisk manufactures the semaglutide in its medicines, pursuant to its FDA approval, in yeast cells under a closely controlled multistep process that uses recombinant DNA technology. Most compounded "semaglutide," however, uses a "semaglutide" manufactured via chemical synthesis. The fundamental differences between these processes have resulted in new impurities, higher levels of known impurities, immunogenicity concerns, and potential stability issues in tested samples of compounded "semaglutide."[6]

---

[3] Compounding Laws and Policies, https://www.fda.gov/drugs/human-drug-compounding/compounding-laws-and-policies.
[4] Compounding and the FDA: Questions and Answers, https://www.fda.gov/drugs/human-drug-compounding/compounding-and-fda-questions-and-answers.
[5] FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products, https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded?utm_medium=email&utm_source=govdelivery.
[6] Morten Hach *et al*, Impact of Manufacturing Process and Compounding on Properties and

39. The FDA has received reports of adverse events, some requiring hospitalization, related to overdoses from dosing errors associated with compounded "semaglutide" products.[7] In several instances, patients mistakenly administered five to 20 times more than the intended dose of compounded "semaglutide."

40. The FDA has stated that the containers and packaging (including multidose vials and prefilled syringes) used by compounders, the varying product concentrations, and the instructions accompanying the compounded drug contribute to the potential medical errors.

41. A publication from the Journal of the American Pharmacists Association also highlighted errors where patients accidentally self-administered doses of compounded "semaglutide" up to ten times greater than the intended amount.[8]

42. FDA has issued guidance on its "Concerns with Unapproved GLP-1 Drugs Used for Weight Loss," which provides that: (1) "compounded drugs are not FDA-approved"; (2) use of compounded drugs containing "semaglutide" "can be risky for patients, as unapproved versions do not undergo FDA's review for safety, effectiveness and quality"; and (3) "FDA has received reports of adverse events related to compounded versions of semaglutide . . . . However, federal law does not require state-licensed pharmacies that are not outsourcing

---

Quality of Follow-On GLP-1 Polypeptide Drugs, Pharm. Res., (Oct. 8, 2024), *available at* https://pubmed.ncbi.nlm.nih.gov/39379664/.

[7] FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products, https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded.

[8] Joseph E. Lambson et al, *Administration Errors of Compounded Semaglutide Reported to a Poison Control Center—Case Series*, 63 J. Am. Pharmacists Assc'n 5 (2023), available at https://www.japha.org/article/S1544-3191(23)00231-5/abstract.

facilities to submit adverse events to FDA so it is likely that adverse events from compounded versions of these drugs are underreported."[9]

### DEFENDANT'S FALSE ADVERTISING IN CONNECTION WITH ITS SALE OF UNAPPROVED COMPOUNDED DRUGS

43. Despite the foregoing, Defendant has made false and misleading representations to patients regarding the nature of its Unapproved Compounded Drugs.

44. Defendant promotes its Unapproved Compounded Drugs by operating and advertising a medical spa, including through its website.

45. Defendant has falsely advertised its Unapproved Compounded Drugs by making statements that describe the Ozempic®, Wegovy®, and Rybelsus® medicines but that are false or misleading when in reference to Defendant's Unapproved Compounded Drugs.

46. Defendant's false advertising and unfair deceptive trade practices are reflected in the paragraphs that follow as well as **Exhibit A** hereto.

47. Defendant falsely claims or implies that its Unapproved Compounded Drugs have been approved by the FDA or have been reviewed by the FDA for safety, effectiveness, and quality. On its website, Defendant claims, "Semaglutide is a newly FDA-approved weight loss medication under the brand name Wegovy." Defendant makes similar false and misleading claims on its social media.

### WHAT IS SEMAGLUTIDE?

Semaglutide is a newly FDA-approved weight loss medication sold under the brand name Wegovy. It is a once-weekly injectable medication that is given as a minimal dose to start and gradually increased until a therapeutic dose is reached.

---

[9] FDA's Concerns with Unapproved GLP-1 Drugs Used for Weight Loss, https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-providers/fdas-concerns-unapproved-glp-1-drugs-used-weight-loss.

## IS SEMAGLUTIDE FDA-APPROVED?

Yes, Semaglutide injection is FDA-approved. So read more about what is Semaglutide Injection.

> The simple subcutaneous fat injections are administered by yourself weekly. The injections are FDA-approved for chronic weight management in adults struggling with obesity. In addition, they are perfect treatments for anyone struggling with their weight and at least one weight-related condition, i.e., high blood pressure, type-2 diabetes, or high cholesterol.

48. Contrary to Defendant's representations, the FDA has made no approval for Defendant's Unapproved Compounded Drugs or a "semaglutide" peptide generally. Instead, the FDA has approved three of Novo Nordisk's complete medicines, which contain semaglutide for the specific indications outlined in the preceding paragraphs.

49. Defendant's false representations mislead customers into believing, incorrectly, that the product with "semaglutide" offered by Defendant has been reviewed and approved by the FDA for safety and effectiveness.

50. Defendant also falsely claims or implies that its Unapproved Compounded Drugs contain the same semaglutide that the FDA evaluated in the context of reviewing and approving Novo Nordisk's new drug applications for the Wegovy®, Ozempic®, and Rybelsus® medicines. As reflected in the statements above, Defendant claims on its website, "Semaglutide is a newly FDA-approved weight loss medication sold under the brand name Wegovy." Defendant makes similar claims on its social media.

51. Defendant's representations characterizing Ozempic®, Wegovy®, and Rybelsus® as "brand" names are misleading and falsely convey to customers that other "semaglutide" medicines have been reviewed or approved by the FDA.

52. Novo Nordisk is not directly or indirectly supplying semaglutide to Defendant or any compounding pharmacies from which they may be sourcing their Unapproved Compounded Drugs.

53. The FDA has not reviewed the "semaglutide" allegedly in Defendant's Unapproved Compounded Drugs for safety, effectiveness, or quality, or otherwise as equivalent in safety, effectiveness, or quality to, Novo Nordisk medicines.

54. Defendant has no basis to compare the "semaglutide" allegedly in its Unapproved Compounded Drugs to Novo Nordisk's FDA-approved medication containing semaglutide.

55. Defendant further falsely claims or implies that its Unapproved Compounded Drugs have been subjected to clinical studies and trials, or have otherwise achieved therapeutic outcomes attributable to the Wegovy®, Ozempic®, and Rybelsus® medicines. On its website, Defendant claims, "The average weight loss achieved in the STEP 1 study of semaglutide for weight loss was 14.9% of the initial body weight over 68 weeks."

### HOW MUCH WEIGHT CAN I LOSE WITH SEMAGLUTIDE?

The average weight loss achieved in the STEP 1 study of semaglutide for weight loss was 14.9% of the initial body weight over 68 weeks. Individual loss varies and depends on how seriously a person commits to adjusting food intake to appropriate portions and choosing healthier options regularly.

In our practice, it is not unusual to see a patient lose roughly 20% of their starting body weight during treatment. This amount of weight loss is a testament to the commitment made by those patients to improve their relationship with food with sustained positive changes over time.

Semaglutide, or any other weight loss medication, is a tool to assist in weight loss while the patient makes other lifestyle changes. No magic pill or injection will change your relationship with food. The patients who lose the most make healthy choices most of the time.

56. On information and belief, Defendant has not conducted any placebo-controlled or clinical studies on its Unapproved Compounded Drugs and is instead misleadingly referring to studies of Novo Nordisk's FDA-approved medicines to promote Defendant's Unapproved Compounded Drugs.

57. On information and belief, Defendant has engaged in these unlawful practices to attract customers and generate revenues and profits.

58. Defendant's labels, advertising, and promotional materials are false and misleading, suggesting or stating an association with Plaintiffs' FDA-approved Ozempic®, Wegovy®, and Rybelsus® medicines when no such association exists.

59. There is no need for Defendant to use the Ozempic®, Wegovy®, and Rybelsus® trademarks to advertise or promote its Unapproved Compounded Drugs purporting to contain "semaglutide," other than to trade on the reputation of Plaintiffs and to create confusion in the marketplace or mislead the public regarding the origin, identity, or source of Defendant's Unapproved Compounded Drugs.

60. Defendant's false and misleading statements and practices are likely to have already caused mistake and deception in the marketplace.

61. Defendant's false and misleading marketing is also likely to expose patients to unnecessary risks. Patients who mistakenly believe Defendant to be offering Novo Nordisk's FDA-approved medicines, or equivalent thereto, are unlikely to understand the unique risks associated with, or the lack of clinical trials or testing establishing the safety and effectiveness of, Defendant's Unapproved Compounded Drugs.[10]

---

[10] *See, e.g.*, Dozens Say They Lost Eyesight After Routine Surgery Using Compounded Pharmacy Drugs, WFAA, https://www.wfaa.com/article/news/do-not-publish-yet/287-5f002ed3-e110-4063-9959-a2e5f54b5097 (reporting mistaken belief of patient taking a compounded drug

62. On information and belief, unless enjoined by this Court, Defendant will continue to falsely advertise its products as being, equivalent to, or associated with the Ozempic®, Wegovy®, and Rybelsus® medicines, all in violation of Plaintiffs' rights.

63. On information and belief, unless enjoined by this Court, Defendant's conduct will continue to cause mistake and deception.

## FIRST CAUSE OF ACTION

**Defendant's False and Misleading Advertising and Promotion
in Violation of 15 U.S.C. § 1125(a)(1)(B)**

64. Plaintiffs reallege and incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

65. Defendant's practices, as described in this Complaint, constitute unfair competition and false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

66. Defendant has violated the Lanham Act by using false or misleading descriptions of fact and false or misleading representations of fact in its commercial advertising or promotion that misrepresent the nature, characteristics, and qualities of Defendant's business practices and products, as set forth above.

67. Defendant has also engaged in other false or misleading advertising and promotion intended to assure patients that Defendant's practices are lawful. On information and belief, Defendant provides patients who purchase Defendant's Unapproved Compounded Drugs

---

that "every pill you take, every shot you take is tested."); FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products, https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded?utm_medium=email&utm_source=govdelivery ("Compounded drugs pose a higher risk to patients than FDA-approved drugs because compounded drugs do not undergo FDA premarket review for safety, quality or effectiveness.").

(or whom Defendant is trying to persuade to purchase its drugs) information that makes several false or misleading statements, including those described herein and in the exhibits hereto:

68. The above-described acts of Defendant, if not enjoined by this Court, are likely to deceive members of the general public.

69. The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs.

70. The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

71. By reason of Defendant's acts as alleged above, Plaintiffs have suffered and will continue to suffer injuries, including injury to Plaintiffs' business reputation.

72. Because Plaintiffs' remedies at law are not adequate to compensate for all the injuries inflicted by Defendant.  Accordingly, Plaintiffs are entitled to entry of preliminary and permanent injunctive relief requiring Defendant to cease its false and misleading advertising and promotion and unfair competitive practices.

73. Because the above-described acts of Defendant are willful, Plaintiffs are entitled to disgorgement of defendant's profits (enhanced at the Court's discretion), treble damages, and costs under 15 U.S.C. § 1117.

74. This is an exceptional case, making Plaintiffs eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

### Deceptive and Unfair Trade Practices in Violation of
### the Michigan Consumer Protection Act, M.C.L.A. §§ 445.903, 445.911

75. Plaintiffs reallege and incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

76. The above-described acts of Defendant constitute unfair methods of competition, and unconscionable, deceptive, or unfair acts or practices in violation of the laws of the State of Michigan.

77. Specifically, the above-described acts of Defendant cause a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods; constitute representations that Defendant's Unapproved Compounded Drugs have sponsorship, approval, characteristics, ingredients, uses, or benefits that they do not have; constitute representations that Defendant's Unapproved Compounded Drugs are of a particular standard, quality, or grade when they are not, in violation of M.C.L.A. § 445.903(a), (c), and (e).

78. By reason of Defendant's acts, Plaintiffs have suffered loss and are entitled to monetary and injunctive relief in accordance with M.C.L.A. § 445.911.

## THIRD CAUSE OF ACTION

### Unfair Competition in Violation of the Common Law

79. Plaintiffs reallege and incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

80. Defendant has made false or misleading descriptions of fact and false or misleading representations of fact in its commercial advertising or promotion that misrepresent the nature, characteristic, and/or qualities of Defendant's business practices and products, as set forth above.

81. The above-described acts of Defendant constitute common law unfair competition.

82. The above-described acts of Defendant unfairly and wrongfully exploit Plaintiffs' trademark, goodwill, and reputation.

83. The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

84. By reason of Defendant's acts, Plaintiffs' remedies at law are not adequate to compensate for the injuries inflicted by Defendant. Accordingly, the Court should enter preliminary and injunctive relief, in addition to awarding disgorgement of Defendant's profits (enhanced at the Court's discretion) and corrective advertising costs to NNAS.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs request judgment against Defendant as follows:

1. That the Court enter a judgment against Defendant that Defendant has:

    a. Engaged in false and misleading advertising and promotion, in violation of 15 U.S.C. § 1125(a);

    b. Engaged in unfair and deceptive trade practices under the common law of Michigan and the Michigan Consumer Protection Act.

2. That each of the above acts was willful.

3. That the Court preliminarily and permanently enjoin and restrain Defendant and its agents, servants, employees, successors, and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendant, from:

    a. using the Ozempic®, Wegovy®, and Rybelsus® marks, including (i) use in any manner likely to cause confusion or mistake, to deceive, or otherwise infringe

    Novo Nordisk's rights in the Ozempic®, Wegovy®, and Rybelsus® marks, or (ii) use in connection with the advertising, marketing, sale, or promotion of any Unapproved Compounded Drugs; and,

b. advertising, stating, or suggesting that any Unapproved Compounded Drugs, including any Unapproved Compounded Drugs that either are available, directly or indirectly, from or through Defendant or the use of which or access to which is facilitated by, or with the involvement of, Defendant:

    i. are, or contain, genuine or authentic Novo Nordisk Ozempic®, Wegovy®, or Rybelsus® medicines;

    ii. are sponsored by or associated with Novo Nordisk;

    iii. are approved by the FDA; have been reviewed by the FDA for safety, effectiveness, or quality; or have been demonstrated to the FDA to be safe or effective for their intended use;

    iv. achieve or have been shown or proven to achieve therapeutic results, effects, or outcomes, including but not limited to by relying on or making reference to clinical trial results for Novo Nordisk's medicines;

    v. achieve or have been shown or proven to achieve therapeutic results, effects, or outcomes similar or identical to Novo Nordisk's medicines or are interchangeable with or equivalent to genuine Novo Nordisk medicines;

    vi. are associated or connected in any way with Novo Nordisk or Novo Nordisk's medicines; or

    vii. contain any ingredient (including semaglutide) that is supplied by Novo Nordisk, is approved by the FDA, or is the same as any ingredient in any Novo Nordisk medicine.

  c. engaging in unfair and deceptive trade practices with respect to Novo Nordisk's Ozempic®, Wegovy®, or Rybelsus® medicines; and

  d. engaging in deceptive acts or practices with respect to Novo Nordisk's Ozempic®, Wegovy®, or Rybelsus® medicines.

 4. That the Court require Defendant to disclose conspicuously and prominently in any public-facing materials for any Unapproved Compounded Drugs, including all advertising, marketing, and promotional materials, that: (a) the Unapproved Compounded Drugs are compounded drugs that have not been approved by the FDA; have not been reviewed by the FDA for safety, effectiveness, or quality; and have not been demonstrated to the FDA to be safe or effective for their intended use; (b) the processes by which the compounded drugs are manufactured have not been reviewed by the FDA; and (c) FDA-approved medicines containing semaglutide are available.

 5. That Plaintiffs be awarded monetary relief in the form of disgorgement of Defendant's profits for Defendant's false advertising and unfair and deceptive trade practices with respect to Novo Nordisk's Ozempic®, Wegovy®, or Rybelsus® medicines and that this monetary relief be trebled due to Defendant's willfulness, in accordance with 15 U.S.C. § 1117 and any applicable state laws.

 6. That the Court award disgorgement to Plaintiffs of Defendant's profits resulting from Defendant's unfair and deceptive trade practices with respect to Novo Nordisk's Ozempic®, Wegovy®, or Rybelsus® medicines.

7.     That Defendant be ordered to account for and disgorge to Plaintiffs all amounts by which Defendant has been unjustly enriched by reason of Defendant's unlawful actions with respect to Novo Nordisk's Ozempic®, Wegovy®, or Rybelsus® medicines.

8.     That Plaintiffs be awarded punitive damages by reason of Defendant's willful unlawful actions with respect to Novo Nordisk's Ozempic®, Wegovy®, or Rybelsus® medicines.

9.     For pre-judgment and post-judgment interest on all damages.

10.    That the Court award Plaintiffs their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and any other applicable provision of law.

11.    That the Court award Plaintiffs the costs of suit incurred herein.

12.    For such other or further relief as the Court may deem just and proper.

January 10, 2025                                                  Respectfully submitted,

By:   /s/ Jeffrey T. Gorcyca
Jeffrey T. Gorcyca (P48867)
Kimberley A. Parrish (P87113)
BOWMAN AND BROOKE LLP
101 West Big Beaver Road, Suite 1100
Troy, MI 48084
T: 248.205.3300
F: 248.205.3399
jeffrey.gorcyca@bowmanandbrooke.com
kimberley.parrish@bowmanandbrooke.com

*Attorneys for Plaintiffs*
*NOVO NORDISK A/S and*
*NOVO NORDISK INC.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 10, 2025, a copy of the foregoing document in the above-captioned proceeding has been served through the electronic e-filing system upon the attorneys listed below.

Ronald G. Dove, Jr. (*pro hac vice* forthcoming)
Robert N. Hunziker, Jr. (*pro hac vice* forthcoming)
Munseong Park (*pro hac vice* forthcoming)
Simeon Botwinick (*pro hac vice* forthcoming)
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
T: 202.662.6000

*Attorneys for Plaintiffs*
*NOVO NORDISK A/S and*
*NOVO NORDISK INC.*

By:   */s/ Jeffrey T. Gorcyca*
Jeffrey T. Gorcyca (P48867)
Kimberley A. Parrish (P87113)
BOWMAN AND BROOKE LLP
101 West Big Beaver Road, Suite 1100
Troy, MI 48084
T: 248.205.3300
F: 248.205.3399
jeffrey.gorcyca@bowmanandbrooke.com
kimberley.parrish@bowmanandbrooke.com

*Attorneys for Plaintiffs*
*NOVO NORDISK A/S and*
*NOVO NORDISK INC.*